## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROSE OKPALOBI**                                               **CIVIL ACTION**

**VERSUS**                                                           **NO. 23-6691**

**AMERICAN NATIONAL PROPERTY AND**              **SECTION: "G"(5)**
**CASUALTY COMPANY, et al.**

### ORDER AND REASONS

Before the Court are Defendant American National Property and Casualty Company's ("ANPAC") Motion to Opt Out of Streamlined Settlement Program,[1] Plaintiff's Motion to Strike Defendant's Motion to Opt Out of the Streamlined Settlement Program,[2] and ANPAC's Rule 12(b)(6) Motion to Dismiss.[3] ANPAC contends that it should be dismissed from this case because Plaintiff is not a party to the insurance contract issued by ANPAC, and it should be allowed to opt out of the Court's Streamlined Settlement Program ("SSP") because it would be costly and inefficient to go through the SSP when Plaintiff does not have a viable claim against it.[4] Plaintiff opposes, contending that Defendants' "Motion to Opt Out of Streamlined Settlement Program" is untimely and that she has sufficiently pled claims against ANPAC.[5] Having considered the motions, the record, and the applicable law, the Court denies Plaintiff's motion and grants both of

---

[1] Rec. Doc. 9.

[2] Rec. Doc. 14.

[3] Rec. Doc. 8.

[4] Rec. Docs. 8, 9, 16, 17, 21.

[5] Rec. Docs. 11, 12, 14, 22.

1

ANPAC's motions.

## I. Background

### A.    *Factual Background*

This litigation arises out of property damage caused by Hurricane Ida on August 29, 2021.[6] Plaintiff Rose Okpalobi, individually and on behalf of the Estate of Ifeyani Charles Anthony Okpalobi filed a Petition in the Civil District Court for the Parish of Orleans on August 29, 2023 against Defendants PHH Mortgage Corporation ("PHH"), Champion Mortgage Company, Inc. ("Champion"), Mortgage Assets Management LLC ("Mortgage Assets"), and ANPAC to recover damages related to the property at 4928 Cartier Avenue, New Orleans, LA 70122 ("Property").[7] Mortgage Assets was formerly known as Reverse Mortgage Solutions, Inc.[8] In the Petition, Plaintiff alleges that the Property sustained damage as a result of Hurricane Ida.[9]

According to Plaintiff, PHH, Champion, and Mortgage Assets (collectively, "Mortgage Companies"), serviced the mortgage on the Property.[10] Plaintiff alleges that these Mortgage Companies took out Policy Number AMJ0079021 ("Policy") with ANPAC for the Property as part of Plaintiff's mortgage, but these Mortgage Companies "intentionally failed and refused to make a claim on the policy…" after the Property sustained damage caused by Hurricane Ida.[11] Plaintiff brings a breach of fiduciary duty claim against PHH, Champion, and Mortgage Assets, asserting

---

[6] Rec. Doc. 1-9 at 3.

[7] *Id.* at 1–2.

[8] *Id.* at 2. Plaintiff alleges in the Petition, and Defendants do not dispute, that Mortgage Assets was formerly known as Reverse Mortgage Solutions, Inc. Thus, the Court will refer to Reverse Mortgage Solutions as Mortgage Assets in this Order and Reasons.

[9] *Id.* at 3.

[10] *Id.* at 3.

[11] *Id.* at 3, 5.

that they owed a fiduciary duty to Plaintiff because Plaintiff is a third-party beneficiary of the Policy.[12] Plaintiff also brings a negligence claim against PHH, Champion, and Mortgage Assets, asserting that they intentionally failed to file a claim on the Policy after Plaintiff notified them that Hurricane Ida caused damage to the Property.[13] Plaintiff asserts a breach of insurance contract claim and claims for violations of Louisiana Revised Statute Sections 22:1892 and 22:1973 against all Defendants as a result of Defendants' alleged failure to timely pay insurance proceeds due under the Policy.[14]

### B.    Procedural Background

On November 3, 2023, ANPAC removed the case to this Court under 28 U.S.C. § 1332(a).[15] On January 3, 2024, ANPAC filed a Motion to Dismiss.[16] ANPAC then filed a Motion to Opt Out of the Streamlined Settlement Program on January 5, 2024.[17] Plaintiff filed oppositions to the Motion to Dismiss and the Motion to Opt Out of the Streamlined Settlement Program on January 15, 2024.[18] Plaintiff also filed a Motion to Strike Defendant's Motion to Opt Out of the Streamlined Settlement Program on January 16, 2024.[19] ANPAC filed replies to Plaintiff's oppositions to both its motions on January 19, 2024.[20] ANPAC also filed an opposition to

---

[12] *Id.* at 6–7.

[13] *Id.* at 7.

[14] *Id.* at 8–10.

[15] Rec. Doc. 1.

[16] Rec. Doc. 8.

[17] Rec. Doc. 9.

[18] Rec. Docs. 11, 12.

[19] Rec. Doc. 14.

[20] Rec. Docs. 16, 17.

Plaintiff's Motion to Strike Defendant's Motion to Opt Out of the Streamlined Settlement Program on January 31, 2024.[21] Plaintiff filed a reply to ANPAC's opposition to its Motion to Strike ANPAC's Motion to Opt Out of the SSP on February 6, 2024.[22]

## II. Parties' Arguments

### A.    *ANPAC's Motion to Dismiss*

#### 1.    ANPAC's Motion

ANPAC moves the Court to dismiss all of Plaintiff's claims against it because Plaintiff is not a party to the insurance contract issued by ANPAC and also cannot assert a claim against ANPAC as a third-party beneficiary to the insurance contract.[23] ANPAC explains that because Plaintiff failed to obtain the insurance required by PHH and Mortgage Assets as a condition of her mortgage loan, Mortgage Assets procured an insurance policy from ANPAC for the Property.[24] ANPAC further notes that the Mortgage Security Policy issued by ANPAC to Mortgage Solutions bears Master Policy Number HZ00016, and the Mortgagor's Notice of Insurance reflecting Certificate Number AMJ0079021 names Mortgage Assets as the Named Insured and Ifyeani Charles Okpalobi as the Borrower/Mortgagor.[25] ANPAC contends that since Mortgage Assets is the only insured under the Policy and since Plaintiff is not an insured, an additional insured, or an intended third-party beneficiary, Plaintiff's claims against ANPAC fail.[26]

---

[21] Rec. Doc. 21.

[22] Rec. Doc. 22.

[23] Rec. Doc. 8 at 1.

[24] Rec. Doc. 8-1 at 1–2.

[25] *Id.* at 2.

[26] *Id.* at 2, 4 (citing *Williams v. Certain Underwriters at Lloyd's of London*, 398 Fed. App'x. 44, 47 (5th Cir. 2010).

ANPAC notes that the Louisiana Supreme Court has identified three factors for determining whether a contract provides a benefit for a third-party.[27] ANPAC next argues that Plaintiff is not a third-party beneficiary to the Policy, as Plaintiff is not named as an additional insured.[28] ANPAC also contends that Plaintiff could not be a third-party beneficiary because the insurance policy Mortgage Assets obtained was solely for the benefit of Mortgage Assets to protects its exposure on the property up to the amount of the mortgage.[29] ANPAC avers that Plaintiff's payment of the premium does not create a legal relationship between the mortgagor and the insurer.[30] ANPAC also avers that "nowhere in the Policy is there a clear intent to provide a benefit to [P]laintiff or a provision requiring ANPAC to pay any benefit to [P]laintiff."[31] According to ANPAC, because Plaintiff's breach of contract claims against it fail, Plaintiff's claims for statutory penalties against ANPAC also fail.[32]

### 2. Plaintiff's Opposition

In opposition, Plaintiff first argues that she has standing to sue as a third-party beneficiary to the insurance policy between ANPAC and Mortgage Assets.[33]  According to Plaintiff, she does

---

[27] *Id.* at 5–6 (citing *Joseph v. Hosp. Serv. District No. 2 of the Par. of St. Mary*, 2005-2364 (La. 10/15/06), 939 So. 2d 1206, 1212) ("1) The stipulation for a third party is manifestly clear, 2) there is certainty as to the benefit provided to the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promise. ")).

[28] *Id.* at 5.

[29] *Id.* at 6–7.

[30] *Id.* at 7 (citing *Brown v. Am. Modern Home Ins. Co.*, No. 16-16289, 2017 WL 2290268, at *4 (E.D. La. May 24, 2017) (Lemmon, J.)).

[31] *Id.* at 9.

[32] *Id.*

[33] Rec. Doc. 11 at 3. Plaintiff also explains that she has Article III standing to sue. *Id.*

not need to be a named insured in order to be a third-party beneficiary.[34] Plaintiff reasons that because the policy limit is set at $1,083,000 even though Plaintiff only has $695,957.48 left on the mortgage, there is $387,042.52 vested interest left for Plaintiff as the mortgagor.[35] Plaintiff concludes that this Policy term "deliberately and manifestly creates a third-party interest … as the interests of both the mortgage company and the homeowner are protected …"[36] Plaintiff further contends that Defendants recognized Plaintiff's third-party beneficiary right "when they acknowledged her claim and acted on her request to restore the insured property."[37]

Second, "Plaintiff contends that [] Defendants owe a fiduciary duty and obligation to [] Plaintiff."[38] Plaintiff does not mention ANPAC specifically, but Plaintiff reasons that because "Defendants have refused to adequately make [] Plaintiff whole, they have failed to preserve and protect the interest of the insured property and the [homeowner], thereby breaching their fiduciary obligation."[39]

Third, Plaintiff avers that the "contract is against public policy as it fails … to protect the interest of the insured property, for which complete premium has been paid."[40] Plaintiff reasons that "Defendant … collect[ed] full premium for the policy coverage limit of $1,083,000, only to make a unilateral declaration that it would only pay the mortgagor's interest of $695,957.48."[41]

---

[34] *Id.*

[35] *Id.* at 4.

[36] *Id.*

[37] *Id.* at 5.

[38] *Id.* at 6.

[39] *Id.* at 5–6.

[40] *Id.* at 7.

[41] *Id.* at 6.

Plaintiff cites *Orion Construction v. PHH Mortgage Inc. et al*, a case proceeding in the Civil District Court for the Parish of Orleans, State of Louisiana involving some of the same parties here to argue that "Defendants have on many occasions acted in bad faith towards [] Plaintiff and other Parties [] involved in the bid to restore the insured property to its pre-hurricane state."[42] Plaintiff attached a Broker's price opinion, Plaintiff's affidavit, a copy of the petition in *Orion Construction*, and correspondence from IAS Claims Services to Mortgage Assets regarding the estimated amount of damages to the Property.[43]

### 3.   ANPAC's Reply

In its reply, ANPAC first counters that Plaintiff does not have the right to sue under a contract.[44] Next, ANPAC argues that the documents Plaintiff attached as exhibits in her opposition should not be considered by the Court because on a Rule12(b)(6) motion to dismiss, courts are generally limited to the factual allegations contained in the pleadings and any attachments to the pleadings.[45] Further, ANPAC contends that none of the attached documents are central to Plaintiff's claims as they do not comprise any contract between Plaintiff and ANPAC.[46] Finally, ANPAC reiterates that Plaintiff has not pled any viable claims against ANPAC because Plaintiff is not a third-party beneficiary to the insurance policy between Mortgage Assets and ANPAC, as Plaintiff is not a named insured on the insurance policy.[47] ANPAC also reasserts that the insurance

---

[42] *Id.* at 7 (citing *Orion Construction v. PHH Mortgage Inc. et al.*, No. 2023-03831 (Civ. Dist. Ct. Par. Orleans 2023).

[43] Rec. Doc. 11-2.

[44] Rec. Doc. 16 at 2–3 (citing *Brown*, 2017 WL 2290258, at *3). ANPAC also contends that Article III standing is not relevant to the Rule 12(b)(6) motion to dismiss here. *Id.*

[45] *Id.* at 3 (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)).

[46] *Id.*

[47] *Id.* at 4–5.

policy was obtained solely for Mortgage Assets' benefit, as this type of "force-placed" policy insures Mortgage Assets' collateral when Plaintiff failed to maintain a specific type of insurance.[48] In reply to Plaintiff's argument that she was made a third-party beneficiary when Defendants initiated property restoration procedures and made payments, ANPAC avers that Plaintiff did not state this allegation in the Petition.[49] ANPAC also notes that it made payments to Mortgage Assets, not Plaintiff, per the Policy terms and that whether Mortgage Assets paid Plaintiff to repair the Property is not attributable to ANPAC.[50]

Second, ANPAC counters that it has no fiduciary duty to Plaintiff because she is neither an insured under the Policy or a third-party beneficiary to the Policy.[51] ANPAC also notes that Plaintiff refers to "Defendants" when discussing her breach of fiduciary claim in her opposition, but in the Petition, her breach of fiduciary duty claims are directed towards the Mortgage Companies.[52]

Third, ANPAC counters that generally, if the terms of an insurance contract do not conflict with statutory provisions or public policy, insurers may limit their liability and impose reasonable conditions on the obligations they contractually assume.[53] ANPAC reasons that "it is not an unusual situation that a requested limit of liability is in excess of [Mortgage Assets'] interest in the property" because as Plaintiff pays down the mortgage, Mortgage Assets' interest in the Property

---

[48] *Id.* at 5 (citing *Williams*, 398 Fed. App'x at 46; *Brown*, 2017 WL 2290268, at *4).

[49] *Id.* at 6.

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.* at 7.

will decrease.[54] ANPAC also contends that public policy considerations are better suited for the legislature rather than the judiciary.[55] Finally, ANPAC counters that Plaintiff's bad faith claims under LA. Rev. Stat. Sections 22:1892 and 22:1973 fail because Plaintiff has not asserted a viable breach of contract claim against ANPAC.[56]

**B.      *Cross-Motions Addressing the Issue of ANPAC Opting Out of the SSP***

     **1.      ANPAC's Arguments in Support of its Motion**

In its Motion to Opt Out of the Streamlined Settlement Program, ANPAC notes that its pending Motion to Dismiss asserts that Plaintiff is neither an insured or third-party beneficiary under the policy issued by ANPAC, and therefore fails to state a claim against it.[57] ANPAC contends that it should be allowed to opt out of the SSP so that the Court may rule on the pending Motion to Dismiss before ANPAC potentially "engage[s] in the costly exchange of documents and disclosures and settlement negotiations."[58]

     **2.      Plaintiff's Cross-Motion to Strike Defendant's Motion and its Opposition to ANPAC's Motion**

In the cross-motion, Plaintiff contends that ANPAC's motion should be denied because it is untimely under the Court's Hurricane Ida Case Management Order ("CMO"), as Defendant did not petition the Magistrate Judge to opt out of the SSP within 15 days of filing its Notice of Removal on November 3, 2023.[59] Plaintiff also filed an opposition to ANPAC's Motion to Opt

---

[54] *Id.*

[55] *Id.*

[56] *Id.* at 7–8.

[57] Rec. Doc. 9-1 at 1 (citing Rec. Doc. 8).

[58] *Id.*

[59] Rec. Doc. 14-1 (citing Hurricane Ida Case Management Order Amendment No. 4.).

Out of the SSP.[60] However, it is the same as the opposition they filed to ANPAC's motion to dismiss.[61]

### 3. ANPAC's Opposition to Plaintiff's Motion to Strike its Motion to Opt Out of the SSP and its Reply to Plaintiff's Opposition

In opposition to Plaintiff's cross-motion, ANPAC avers that its motion is not untimely because the Court's CMO requires a party to opt out of the SSP within 15 days of filing a responsive pleading, but its Notice of Removal is not a responsive pleading to start the 15-day clock.[62] Instead, ANPAC asserts that an answer is a responsive pleading as defined in Federal Rule of Civil Procedure 7 and ANPAC has not yet filed an answer.[63] ANPAC also filed a reply to Plaintiff's opposition to its Motion to Dismiss.[64] ANPAC also adopts the arguments it made in its reply to Plaintiff's opposition to its Motion to Dismiss.[65]

### 4. Plaintiff's Reply

Plaintiff filed a reply, arguing that ANPAC's motion is untimely because it was not filed within 15 days of the Court's entry of the CMO Order on December 12, 2023.[66]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for

---

[60] Rec. Doc. 12

[61] *See* Rec. Doc. 11.

[62] Rec. Doc. 21 at 1.

[63] *Id.*

[64] Rec. Doc. 17.

[65] *Id.*

[66] Rec. Doc. 22.

failure to state a claim upon which relief can be granted."[67] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[68] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."[69] The "[f]actual allegations must be enough to raise a right to relief above the speculative level."[70] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[71] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[72] Although a court must accept all "well-pleaded facts" as true, a court need not accept legal conclusions as true.[73] "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations."[74] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[75] If the factual allegations are insufficient to raise a right to relief above the speculative level, or an "insuperable" bar to relief exists, the claim must be dismissed."[76]

---

[67] Fed. R. Civ. P. 12(b)(6).

[68] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[69] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). (internal quotation marks omitted).

[70] *Twombly*, 550 U.S. at 555. Put another way, a plaintiff must plead facts that allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

[71] *Iqbal*, 556 U.S. at 678.

[72] *Id.*

[73] *Id.* at 677–78.

[74] *Id.* at 679.

[75] *Id.* at 678.

[76] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

## IV. Analysis

### A.     *Motion to Dismiss*

ANPAC moves the Court to dismiss all claims Plaintiff has asserted against it, arguing that Plaintiff neither entered into an insurance contract with ANPAC nor is an intended third-party beneficiary to the insurance policy.[77] Plaintiff opposes, contending that she was a third-party beneficiary to the insurance policy, as the policy limit exceeds the remaining balance on her mortgage.[78] Plaintiff also argues the insurance policy is void as it is against public policy.[79]

Plaintiff asserts several claims against ANPAC and Mortgage Companies in the Petition.[80] In the "Causes of Action" section of the Petition, Plaintiff first asserts a "Breach of Fiduciary" claim against PHH, Champion, and Mortgage Assets for failing to file claims with ANPAC after the Property was damaged by Hurricane Ida.[81] Plaintiff alleges that these "mortgage companies owe a fiduciary duty to the Plaintiff because she is a third-party beneficiary of the insurance contract/policy #AMJ0079021."[82] ANPAC is not named in the "Breach of Fiduciary" duty section of the Petition. Plaintiff next asserts a "Particulars of Negligence" claim against the "mortgage companies," alleging that they "breached [t]he duty of care by intentionally failing to file an insurance claim after Hurricane Ida caused significant damage to Plaintiff's property …"[83] ANPAC is not mentioned in the "Particulars of Negligence" section of the Petition. Plaintiff then

---

[77] Rec. Docs. 8, 16

[78] Rec. Doc. 11.

[79] *Id.* at 6–7.

[80] Rec. Doc. 1-9 at 6–10.

[81] *Id.* at 6.

[82] *Id.*

[83] *Id.* at 7.

brings a "Breach of the Insurance Contract" claim against "the mortgage companies and the insurance company," alleging that they failed to timely pay Plaintiff her insurance proceeds.[84] Finally, Plaintiff asserts "Bad Faith" claims against "Defendants" under La. Rev. Stat. Sections 22:1973 and 22:1892.[85] She references an "insurer" in this claim.[86]

The Court turns to address the breach of insurance contract claim and bad faith claims Plaintiff asserted in the Petition and which ANPAC argues are not viable claims. Although it is facially clear from the Petition that the breach of fiduciary duty claim is not asserted against ANPAC, the Court also addresses this claim because Plaintiff appears to raise this claim against ANPAC in her opposition to the Motion to Dismiss.

### 1. The Breach of Insurance Contract Claim

The Fifth Circuit has recognized that under Louisiana law, to state a claim under an insurance policy, the plaintiff must be a named insured, an additional named insured, or an intended third-party beneficiary of the policy.[87] ANPAC and Plaintiff dispute whether Plaintiff is a third-party beneficiary.

Under Louisiana law, a contract for the benefit of a third-party is referred to as a stipulation *pour autrui*.[88] The party claiming the benefit of a stipulation *pour autrui* bears the burden of proof.[89] Although La. Civ. Code article 1978 specifies that stipulations *pour autrui* may exist,

---

[84] *Id.* at 8–9.

[85] *Id.* at 9.

[86] *Id.*

[87] *Williams*, 398 Fed. App'x at 47 (citing *Joseph*, 939 So. 2d at 1211; La. Civ. Code art. 1978).

[88] *Joseph*, 939 So. 2d at 1212.

[89] *Id.*

"[t]he code provides no analytic framework for determining whether" one exists in any given situation.[90] The Louisiana Supreme Court has articulated a three-part test for determining whether a contract contains a stipulation *pour autrui*: (1) the contract must manifest a clear intention to benefit the third-party; (2) there must be certainty as to the benefit provided to the third-party; and (3) the benefit must not be merely an incident of the contract between the parties.[91]

In *Williams v. Certain Underwriters at Lloyd's London*, the Fifth Circuit considered whether the terms of a force-place flood insurance policy created a stipulation *pour autrui* in favor of the plaintiffs, the Williamses.[92] The policy listed the mortgagee, Homecomings, as the sole insured and provided coverage up to $169,000.[93] The Fifth Circuit, applying Louisiana law, concluded that the policy did not manifest a clear intention to benefit the Williamses.[94] The Fifth Circuit pointed to the policy clearly and unambiguously stating, "Regardless of the insurable interests of the owners [the Williamses] … in the insured property, you [Homecomings] are our sole insured under this policy. Further, to obviate any possible ambiguity, the Policy specifies that Homecomings is Lloyd's sole insured under this policy and that benefits paid will be made directly to Homecomings."[95] The Fifth Circuit also observed that though the policy limit of $169,000 exceeded the Williamses' principal mortgage balance of $142,617.80, the insurance policy did not

---

[90] *Joseph*, 939 So.2d at 1211.

[91] *Id.* at 1212–13.

[92] *Williams*, 398 Fed. App'x at 45. *See Cotton v. Certain Underwriters at Lloyd's, London*, 831 F.3d 592, 595 (5th Cir. 2016) (noting that "*Williams* based its 'no standing' holding on a Louisiana case that treated the issue as one of failure to state a claim.") (citation omitted).

[93] *Williams*, 398 Fed. App'x at 45

[94] *Id.*

[95] *Id.*

contain a provision expressly stating that any excess payment would be given to the Williamses.[96]

The Fifth Circuit concluded that "[e]ven assuming that any potential [excess payments] might go

to the Williamses, the language in the Policy falls well below the requisite finding of a 'manifestly

clear stipulation' to create a stipulation *pour autrui*."[97]

Other sections of this Court have considered whether a stipulation *pour autrui* exists in

forced-placed insurance contracts. In *Brown v. American Modern Home Insurance Company*, the

presiding judge considered whether two force-placed insurance policies, one issued by American

Modern Home Insurance Company ("American Modern"), and another issued by American

Specialty Insurance Company ("American Specialty"), created a stipulation *pour autrui* in favor

of the plaintiffs.[98]   The presiding judge first discussed the American Modern policy, which

contained a clause stating that "You hereby direct that any benefits due which are in excess of your

interest in the property be paid to the mortgagor …" manifested a clear intent to benefit the

plaintiff.[99] The presiding judge found that the plaintiff did not allege sufficient facts, namely the

amount of loss exceeding the mortgage balance, to state a breach of insurance contract claim but

granted the plaintiff leave to amend the complaint to allege these facts.[100] The presiding judge then

turned to evaluating the American Specialty insurance policy, which "[did] not have a similar loss

payee clause that would require payment to plaintiffs' of insurance proceeds in excess of their

---

[96] *Id.* at 49. The Fifth Circuit distinguished *Williams* from *Lee v. Safeco Insurance Company of America*, where the insurance policy stated that "Amounts payable in excess of your [AMC's] interest will be paid to the borrower unless some other person is named by the borrower to receive payment." *Id.* (citing *Lee. v. Safeco Ins. Co. of Am.*, No. 08-1100, 2008 WL 2622997 (E.D. La. July 2, 2008) (Africk, J.) (internal quotations marks omitted)).

[97] *Id.*

[98] *Brown*, 2017 WL 2290268, at *5–6.

[99] *Id.* at *5.

[100] *Id.*

mortgage balance."[101] The presiding judge concluded that there was no manifestly clear intention for the American Security policy to provide a benefit to the plaintiffs, as there was no mention of the plaintiffs' insurable interest or provision for payment to the plaintiffs.[102]

In *Henderson v. Certain Underwriters at Lloyds*, the presiding judge found that a temporary housing expense provision in the forced-placed insurance contract was clearly intended to benefit the mortgagee, as the mortgage company could not benefit from temporary housing.[103] In *Lee v. Safeco Insurance Company of America*, another section of this Court looked to the insurance policy's language that "[a]mounts payable in excess of your interest will be paid to the 'borrower' unless some other person is named by the 'borrower' to receive payment " created a stipulation *pour autrui* in favor of the plaintiffs.[104]

Here, Section I of the insurance policy that ANPAC issued states that ANPAC "will provide coverage for loss or damage … in the absence of acceptable mortgagor furnished insurance …"[105] Section I further states that "[w]e will issue a Mortgagor's Notice of Insurance for an amount not to exceed your insurable interest in the property with an effective date concurrent with the latest of (1) the date of the mortgagor's indebtedness to the mortgagee …"[106] The Mortgagor's Notice of Insurance in turn lists Reverse Mortgage Solutions Inc. (Mortgage Assets) as the "Named Insured/Mortgagee" and Ifeanyi Charles Anthony Okpalobi as the "Borrower/Mortgagor" and

---

[101] *Id.* at *6.

[102] *Id.*

[103] *Henderson*, 2009 WL 3190710, at *3.

[104] *Lee*, 2008 WL 2622997, at *4–5.

[105] Rec. Doc.  8-2 at 5.

[106] *Id.*

states that the policy limit is $1,083,000.[107] The policy states that Mortgage Assets' insurable interest "is limited to the net principal balance plus any accrued interest, but exclusive of late fees and other charges, as of the date that any loss is reported to us."[108] In the "Premium refunds" subsection, the policy provides that ANPAC will refund the unused portion of the premium directly to Mortgage Assets if the policy is cancelled.[109] The policy also explains the process for submitting a claim in a provision titled "Your duties and the mortgagor's duties after loss."[110] The policy states that Mortgage Assets and the Mortgagor had the duty to send to ANPAC within 60 days after the loss "[t]he interest of you, the mortgagor and all others in insured property …"[111]

Plaintiff has not met her burden of proof for establishing that such a stipulation *pour autrui* exists in her favor.[112] Plaintiff alleges in the Petition that the remaining balance on the mortgage is $695,957.48 and argues in her opposition that because the policy limit of $1,083,000 exceeds the mortgage balance by $387,042.52, this remaining amount is intended to benefit her.[113] While accepting that Plaintiff's factual allegation that $695,957.48 is the remaining balance on her mortgage is true, the policy does not contain a provision stating that any excess payment would be given to the mortgagor. As courts have found, the policy limit exceeding the mortgage balance, without an express term that the mortgagor would receive the excess payment, does not

---

[107] Rec. Doc. 8-2 at 1, 2.

[108] *Id.* at 8.

[109] *Id.* at 11.

[110] *Id.* at 9.

[111] *Id.*

[112] *Joseph*, 939 So. 2d at 1212.

[113] Rec. Doc. 11 at 4 (citing *Abney v. Allstate Ins. Co.*, 442 So. 2d 590 (La. App. 1 Cir. 1983); *Henderson*, 2009 WL 3190710)).

demonstrate that the insurance policy manifested a clear intention to benefit the mortgagor or that the mortgagor would receive any excess amount.[114] Any amount of this $387,042.42 Plaintiff receives would merely be incidental to the insurance policy between ANPAC and Mortgage Assets. Further, the provision of the policy stating that any unused portions of the premium will be refunded directly to Mortgage Assets if the policy is cancelled suggests that the policy is not intended to benefit Plaintiff, as Plaintiff will not even be directly paid back for the insurance premium that she paid.[115]

Plaintiff also argues that her "third-party beneficiary right was recognized by the Defendants when they acknowledged her claim and acted on her request to restore the insured property."[116] In the Petition, Plaintiff alleges that she "promptly reported the loss to the Defendants and the insurance company proceeded to assign a claim number to the loss" and ANPAC's adjusters "investigate[d], process[ed], evaluat[ed], approv[ed], and/or den[ied] in whole or in part Plaintiff's claim."[117] However, the Petition is vague as to whether ANPAC directly sent payment to Plaintiff on the claim, as Plaintiff only alleges that "[t]he proceeds tendered by the insurance company have been wholly inadequate."[118] Plaintiff allege that "[t]he insurance company refused to make additional tenders … as they contended that the additional insurance policy was taken out

---

[114] *See Brown*, 2017 WL 2290268, at * 5; *Lee*, 2008 WL 2622997, at *4–5. *Abney*, which Plaintiff cites, concerns an insurer, Allstate Insurance Company ("Allstate"), contracting with Jerry Brandin Construction Company ("Brandin") to make repairs on the plaintiff's home. *Abney*, 442 So. 2d at 590, 591. The Louisiana First Circuit Court of Appeal concluded that "[t]he obligation to repair, in the contract between Allstate and Brandin, was for the benefit of plaintiff," but the court did not discuss the relevant language that led the court to its conclusion. *See id.* The Court finds that *Williams*, *Henderson*, *Brown*, and *Lee* are more analogous to the instant motions before the Court.

[115] Rec. Doc. 8-2 at 11.

[116] Rec. Doc. 11 at 5.

[117] Rec. Doc. 1-9 at 3.

[118] *Id.* at 5.

in the name of the mortgage companies, giving them only the prerogative to make a claim or sue for any insurance claims thereof."[119] Viewing these allegations in the most favorable light for Plaintiff, the Court is unable to infer that ANPAC made any direct payments to Plaintiff. As discussed above, the insurance policy placed certain duties on Plaintiff as the mortgagor after the Property sustains a loss, such as notifying ANPAC of the loss and allowing the property to be inspected.[120] Courts have recognized that "duties do not transform plaintiffs into named or additional insureds or third-party beneficiaries of the insurance policies."[121]

Finally, Plaintiff argues that the insurance policy should be voided because it is contrary to public policy, as ANPAC received "full premium for the policy coverage limit of $1,083,000, only to make a unilateral declaration that it would only pay the mortgagor's interest of $695,957.48, thereby fraudulently shortchanging [] Plaintiff."[122] ANPAC counters that Plaintiff has failed to identify any statutory provisions or public policy that the insurance policy here would be contrary to.[123] The Louisiana Supreme Court has recognized that "[a]bsent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume."[124] Plaintiff has not cited to any statutory provisions or a specific public policy of voiding an insurance contract in which an insured is not provided coverage to the policy limit. Further, it

---

[119] *Id.*

[120] Rec. Doc. 8-2 at 9.

[121] *Brown*, 2017 WL 2290268, at *5.

[122] Rec. Doc. 11 at 6.

[123] Rec. Doc. 16 at 6–7.

[124] *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994) (citations omitted).

is not unreasonable for a gap to exist between Plaintiff's alleged remaining mortgage balance of $695,957.48, which is Mortgage Assets' insured interest, and the full policy limit of $1,083,000. The Mortgagor's Notice of Insurance was effective August 21, 2021 and states that the policy limit is $1,083,000.[125] It is reasonable to infer that at the time the Mortgagor's Notice of Insurance was effective, Plaintiff's mortgage was higher than the $695,957.48 she alleges is outstanding when she filed the Petition on August 29, 2023, as nearly two years have elapsed.

The insurance policy does not expressly state that Plaintiff would receive any excess of Mortgage Assets' insured interest, and so a stipulation *pour autrui* does not exist in Plaintiff's favor. Plaintiff's duties under the insurance policy to report the property damage and allow inspections of the property does not create any third-party beneficiary rights. Further, Plaintiff has not identified any specific Louisiana statutory provisions or a specific public policy that the insurance policy terms would be contrary to. Accordingly, Plaintiff has not stated a viable breach of insurance contract claim against ANPAC.

### 2. Bad Faith Statutory Claims

Because Plaintiff failed to state a breach of contract claim against ANPAC, Plaintiff also fails to state claims under La. Rev. Stat. Sections 22:1892 and 22:1973 against ANPAC, as any recovery under those statutes is based on the existence of an insurance contract between ANPAC and Plaintiff.

### 3. Breach of Fiduciary Duty Claim

In her opposition to the Motion to Dismiss, Plaintiff appears to raise a breach of fiduciary claim against ANPAC for the first time. She "contends that the Defendants owe a fiduciary duty

---

[125] Rec. Doc. 8-2 at 1.

and obligation to the Plaintiff."[126] Plaintiff alleges that "[t]he defendants unilaterally produced an executed the subject insurance policy, without the input or consent of the Plaintiff[,] [t]he said insurance policy was executed to protect the property of the Plaintiff, with the Defendants as named parties to the policy[,] [t]he insurance policy creates a vested interest for the Plaintiff as it covers the full value of the property, which is in excess of the interest of the mortgage company[, and] [t]he Defendant, as the named insured, is the only party allowed to produce a proof of loss, thereby leaving Plaintiff at the mercy of the Defendant as regards being adequately made whole."[127] Plaintiff cites to *Sampson v. DCI of Alexandria*, where the Louisiana Third Circuit Court of Appeal noted that "[a] fiduciary relationship has been described as one that exists when confidence is reposed on one side and there is resulting superiority and influence on the other."[128] The court further noted "[t]he word 'fiduciary,' as a noun, means one who holds a thing in trust for another…"[129] In *Sampson*, the parties entered into a contract to build a house for the plaintiffs, the Sampsons.[130] The contractor, DCI, obtained a builder's risk policy for the benefit of plaintiffs because DCI was able to obtain the policy at a better price than the plaintiffs were able to.[131] However, DCI listed itself as the beneficiary on the policy rather than the plaintiffs.[132] The court concluded that "DCI breached a fiduciary duty to the Sampsons in its handling of the builder's risk

---

[126] Rec. Doc. 11 at 5.

[127] *Id.* at 5–6.

[128] *Sampson v. DCI of Alexandria*, 2007-671 (La. App. 3 Cir. 10/31/07); 970 So. 2d 55, 59–60 (citation and internal quotation marks omitted).

[129] *Id.* at 60 (citation omitted).

[130] *Id.* at 57.

[131] *Id.*

[132] *Id.*

policy …"[133]

This Court has recognized that a plaintiff cannot raise a new claim in opposition to a motion to dismiss.[134] However, the Fifth Circuit has instructed that "[g]enerally a new claim raised in response to a dispositive motion should be construed as a request for leave to amend the complaint, and the district court should determine whether leave should be granted."[135]  Here, it would be futile to grant Plaintiff leave to amend the Petition to assert a breach of fiduciary claim against ANPAC, as ANPAC is not a fiduciary. ANPAC is not "one who holds a thing in trust for another …"[136] Unlike in *Sampson* where the contractor obtained an insurance policy on behalf of the plaintiffs and was considered a fiduciary, ANPAC is the insurer and is not a fiduciary who owes Plaintiff a duty to enforce the rights she may have under the insurance policy.[137]

The insurance policy does not confer upon Plaintiff any third-party beneficiary rights, as it does not manifest a clear intention to benefit Plaintiff, it is uncertain what benefit is provided to Plaintiff, and any benefit Plaintiff receives is incidental to the insurance policy between Mortgage Assets and ANPAC.[138] Therefore, Plaintiff's breach of insurance contract and bad faith statutory claims against ANPAC both fail. Further, to the extent that Plaintiff asserts a breach of fiduciary claim against ANPAC for the first time, it would be futile to grant Plaintiff leave to amend her Petition, as ANPAC is not a fiduciary.

---

[133] *Id.* at 59.

[134] *D'Aquin v. New Orleans Mission*, No. 16-12852, 2017 WL 3382455, at *4 (E.D. La. Aug. 7, 2017) (Brown, J) (citation omitted).

[135] *Pierce v. Hearne Ind. Sch. Dist.*, 600 Fed. App'x. 194, 200 (5th Cir. 2015) (citation omitted).

[136] *Sampson*, 970 So. 2d at 60.

[137] *See id.* at 57, 59.

[138] *Joseph,* 939 So. 2d at 1212–13.

**B.      *Motion to Opt Out of Streamlined Settlement Program***

Having determined that ANPAC's Motion to Dismiss should be granted, the Court also finds it appropriate to grant ANPAC's Motion to Opt Out of the SSP, as it would be contrary to the efficient administration of justice. This Court adopted Case Management Order ("CMO") No. 1 on August 26, 2022 to facilitate the speedy and orderly resolution of insurance cases arising out of Hurricane Ida through the SSP.[139] Requiring ANPAC to proceed with the SSP hinders the resolution of this matter and thus would be contrary to the goals of the CMO in efficiently resolving Hurricane Ida disputes, as Plaintiff has no viable claims against ANPAC. Other sections of this Court have granted the defendants' untimely motions to opt out of the SSP when there was a mandatory, enforceable arbitration clause in Hurricane Ida disputes because it would promote the efficient administration of justice.[140]

## V. Conclusion

Plaintiff has not met her burden of proof in establishing that a stipulation *pour autrui* exists in her favor so that she may have third-party beneficiary rights to assert breach of insurance contract and statutory bad faith claims based on the force-placed insurance policy between Mortgage Assets and ANPAC. Plaintiff is also precluded from bringing a breach of fiduciary duty claim against ANPAC because ANPAC is not a fiduciary here and thus does not owe any fiduciary duty to Plaintiff. Because Plaintiff fails to state a viable claim against ANPAC, ANPAC must be allowed to opt out of the SSP and be dismissed as a defendant in this matter.

Accordingly,

---

[139] *See* Rec. Doc. 7.

[140] *Academy of Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London*, 651 F.Supp.3d 822, 831 (E.D. La. 2023) (Africk, J.) (419 *Carondelet, LLC v. Certain Underwriter's at Lloyd's London, et al.*, No. 22-4311, 2023 WL 143318, at *2–3 (E.D. La. Jan. 10, 2023) (Vitter, J.).

**IT IS HEREBY ORDERED** that American National Property and Casualty Company's "Motion to Opt Out of the Streamlined Settlement Program"[141] is **GRANTED.**

**IT IS FURTHER ORDERED** that American National Property and Casualty Company's "Rule 12(b)(6) Motion to Dismiss"[142] is **GRANTED.** Plaintiff Rose Okpalobi's claims against American National Property and Casualty Company are **DISMISSED WITH PREJUDICE.**

**NEW ORLEANS, LOUISIANA**, this 28th day of February, 2024.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[141] Rec. Doc. 9.

[142] Rec. Doc. 8.

24